Filed 5/15/25  P. v. Perez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>STEVEN ANTHONY PEREZ,<br><br>     Defendant and Appellant. | F087898<br><br>(Super. Ct. No. 22CR-06343)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Kari Mueller, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Detjen, J. and Smith, J.

INTRODUCTION

Defendant Steven Anthony Perez stabbed a man several times and a jury convicted him of assault with a deadly weapon. The trial court found true that defendant had two prior strike convictions within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12).[1] Thereafter, the court sentenced him to prison for a term of 25 years to life plus 13 years.

Defendant appeals his sentence, arguing that the trial court abused its discretion by denying his motion to strike his prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and for failing to strike other sentencing enhancements. We reject defendant's claim and affirm the judgment.

## PROCEDURAL BACKGROUND

The District Attorney of Merced County filed a second amended information on February 15, 2024,[2] charging defendant with assault with a deadly weapon (§ 245, subd. (a)(1)), and also alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)), three prior strike convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12), three prior serious felony convictions (§ 667, subd. (a)), and several aggravating sentencing factors, including that the crime disclosed a high degree of cruelty (Cal. Rules of Court, rule 4.421(a)(1)),[3] defendant was armed with a weapon during the crime (rule 4.421(a)(2)), the victim was particularly vulnerable (rule 4.421(a)(3)), the crime was carried out with planning and sophistication (rule 4.421(a)(8)), defendant was engaged in violent conduct that indicates a serious

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     The second amended information was filed following a trial in which the jury acquitted defendant of attempted murder and the additional allegation that defendant acted intentionally, deliberately and with premeditation (§§ 664, 187, subd. (a), 189, subd. (a); count 1) but failed to a reach a verdict on the charge of assault with a deadly weapon.

[3]     Undesignated rule references are to the California Rules of Court.

danger to society (rule 4.421(b)(1)), defendant had numerous prior convictions or sustained petitions in juvenile delinquency proceedings of increasing seriousness, (rule 4.421(b)(2)), and defendant served prior prison terms (rule 4.421(b)(3)). Defendant pleaded not guilty and denied the allegations.

On February 21, 2024, after a six-day trial, the jury convicted defendant of assault with a deadly weapon and found true that defendant personally inflicted great bodily injury on the victim. After defendant waived his right to a jury trial regarding his prior strike convictions, the trial court found true two of the strike and serious felony conviction allegations.[4]

On April 10, 2024, the trial court denied defendant's motion to strike his prior strike conviction and sentenced him to 25 years to life, plus 13 years (§§ 12022.7, subd. (a), 667, subd. (a)). The court further ordered defendant to pay a $10,000 restitution fine (§ 1202.4), a suspended $10,000 parole revocation restitution fine (§ 1202.45), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373).

Defendant filed a timely notice of appeal on April 16, 2024.

## FACTS

On December 15, 2022, Ernest Sanchez, accompanied by Francis Cosio, parked his truck in a store parking lot, and was joined by Michelle Arroyo. Arroyo and Sanchez saw defendant passing by on a three-wheel bike.[5] Arroyo observed that defendant was mumbling and pointing to the truck. As defendant was riding back and forth near his truck, Sanchez told him to get away and defendant rode away towards the store. Cosio

---

[4] Defendant waived his right to a jury trial on any findings of facts related to sentencing factors and agreed the trial court could consider such factors in relation to defendant's motion to strike his convictions.

[5] Although it had three wheels, defendant's conveyance was primarily referred to as a bicycle and will we use that term as well.

heard Sanchez say to someone, " '[n]ice bicycle,' " or " '[h]ave a nice day,' " or " '[f***] you,' " but did not see the individual.

Approximately 15 or 20 minutes later, defendant returned, reached inside Sanchez's open window, and stabbed him in the shoulder and left upper arm. As Sanchez attempted to move to the front passenger seat, defendant stabbed him again in the area of his left-side rib cage and in the chest. Sanchez said he had been stabbed as he dove onto Cosio. Cosio opened the door and he and Sanchez got out of the truck. Sanchez was holding his rib.

They chased defendant as he rode away on the bicycle and Sanchez grabbed defendant's bicycle but could not stop defendant. Defendant swung the knife at Cosio. Sanchez weakened and returned to his truck. Arroyo drove Sanchez to the hospital where he was transferred to another hospital. Sanchez received staples to his chest and torso. Although Sanchez recovered, he has limited strength and mobility in his arm, still experiences pain, and required additional surgery.

Surveillance video and receipts from the store show defendant purchased a bottle of wine and a knife just before the attack using his debit card. Law enforcement obtained the information and responded to defendant's apartment, located across the street from the store parking lot, and saw defendant's three-wheel bicycle located on the patio. The rear wheels had been removed although defendant's roommate had seen them on the bicycle earlier in the day.

Defendant returned to his apartment and shaved off his beard and mustache before leaving again. The officers found evidence in the bathroom indicating that defendant had shaved after returning home. They also recovered the debit card defendant used to purchase the knife. Officers searched the communal garbage and found the plastic in which the knife had been packaged.

Defendant returned to the apartment while law enforcement were present, and officers observed that defendant had no visible injuries He told them that someone had

4.

tried to steal his bicycle, and he resisted and defended himself when attacked. After being transported to the police station and waiving his rights, defendant again told officers that someone told him to give up his bicycle and he had to defend himself. He admitted that he shaved his beard and mustache to disguise his appearance and discarded the knife he used into a garbage bin.

Defendant testified that, on December 15, 2022, he rode his blue bicycle to the store. He saw Sanchez and the other individuals in a truck in the parking lot and extended holiday greetings. However, Sanchez responded with a threat to take his bicycle. Defendant entered the store and purchased wine and a knife to protect himself. He opened the packaging for the knife and discarded it in the garbage can before approaching the other individuals.

Defendant approached the truck, rather than avoiding the individuals, because he wanted to ascertain whether they intended to pursue him and take his bicycle. Sanchez then told the other individuals to get out of the truck and " 'get [defendant].' " Defendant then stabbed Sanchez in the arm because he believed the other individuals were preparing to attack him. They chased defendant as he rode away. He threw the knife away in the dumpster at his apartment complex and told his roommate that he intended to report the incident to the police. In preparation for doing that, defendant shaved to avoid being seen by the victim and other individuals but not in an attempt to disguise himself from law enforcement. Although he took the wheels off his bicycle, he did so to fix them and not as an attempt to hide it from law enforcement.

## DISCUSSION

### I. *The trial court did not abuse its discretion in denying defendant's motion to strike his prior strike conviction.*

#### A.     Sentencing Background

Defendant's first conviction occurred in 1980 after he pleaded no contest to obstructing and resisting a police officer, a misdemeanor, and was sentenced to 17 days in

jail. In 1981, defendant pleaded guilty to voluntary manslaughter and assault with a deadly weapon and was sentenced to six years in prison. Defendant pleaded guilty to battery with serious injury in 1986 and was sentenced to two years in prison and, while in prison in 1987, pleaded no contest to assault by a prisoner and received a sentenced of two additional years in prison. Defendant was ordered to be placed on probation for a term of three years for misdemeanor burglary in 1991, was sentenced to a term of seven years in prison for burglary in 1994, and placed on probation for a term of three years for misdemeanor battery with serious bodily injury in 1998. Between 2005 and 2012, defendant was placed on separate three-year terms of probation for driving under the influence, assault likely to result in great bodily injury, and battery on a spouse.

Regarding the offense, defendant told the probation officer that he defended himself because the victim was attempting to take his bicycle, and he believed probation was an appropriate sentence for his crime. In recommending a sentence for defendant, the probation officer concluded that defendant's criminal history demonstrated a pattern of violent and aggressive behavior by inflicting great bodily injury with weapons on his victims. Additionally, the probation officer noted that defendant showed no remorse for his actions, falsely claimed to be defending himself and exhibited premeditation by purchasing the knife after his initial encounter with the victim. Defendant fled the scene and altered his appearance to avoid apprehension. His conduct endangered the public and demonstrated a disregard for public safety. The victim suffered a life-threatening injury, limited mobility of his arm and still suffers effects from injury to his colon. The probation officer concluded that defendant presented a threat to public safety due to the egregious circumstances of the offense, defendant's lack of remorse and willful intent, as well as his criminal history.

Defendant filed a motion requesting the trial court to strike one of his prior convictions. He argued that he was subject to a five-year enhancement for his prior serious felony conviction, application of his enhancements exposed him to a 25-year term

6.

in prison, his prior strikes were more than five years old, and defendant's crime was caused by his prior victimization and mental illness. The prosecutor opposed the request.

At defendant's sentencing hearing, defense counsel called individuals to testify regarding defendant's prospects for rehabilitation. One neighbor testified to knowing defendant for 10 years during which time he had been kind and helpful to everyone living at the apartment complex. She was shocked by his conduct and suggested that he needed counseling instead of incarceration. Another individual testified that defendant was one of her most wonderful friends who helped her care for another individual who was confined to a wheelchair. Defendant's cousin described defendant's actions to change his life and his acts of kindness.

Defense counsel argued that defendant had lived a crime-free life for 10 years before this incident and had been victimized previously which caused him to believe he needed to defend himself.

The trial court reviewed defendant's criminal history and the facts of the current offense and noted its similarity to defendant's past conviction for voluntary manslaughter in which he used a knife. The court noted that it had considered defendant's background, character, and prospects for moving forward. Additionally, the court concluded that defendant's crime exhibited a high degree of cruelty, viciousness, and callousness in that defendant engaged in a surprise attack to stab the victim and inflicted long-term debilitating injuries. The court found that the victim was particularly vulnerable as he was seated in his vehicle and could not avoid the attack. Defendant planned the attack. The court found that defendant had numerous prior convictions, served prior prison terms, and engaged in violent conduct indicating that he is a serious danger to society.

In mitigation, the trial court acknowledged that defendant experienced psychological and physical trauma due to previously being the victim of assaults and robbery. Additionally, multiple enhancements, including one from a conviction more than five years old, was alleged in a single case. However, the court found that defendant

7.

was not outside the spirit of the Three Strikes law given these factors and defendant's belief that he was the victim in this case and failed to exhibit remorse for his conduct. The court explained, "[D]efendant has demonstrated that even at his advanced age of 60 years old, he is capable of committing violence upon individuals in the community. Even with a long hiatus in violent conduct, … defendant has demonstrated that he is ready, willing, and able to continue to perpetrate violence, seemingly on something as simple as having felt offended after having been sworn at by a stranger." The court concluded, "[o]bviously, it's a 'Three Strikes' case .…"

While recognizing that the trial court had the discretion to dismiss the enhancements in the case, the court declined to do so because it would endanger public safety and likely result in physical injury and serious danger to society based upon both the facts of the case and defendant's violent history of criminal conduct.

## B.    Applicable Law and Standard of Review

Section 1385 grants trial courts discretion to dismiss a prior strike conviction if the dismissal is in furtherance of justice. (§ 1385, subd. (a); *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 504, 529–530.) " '… A court's discretion to strike [or vacate] prior felony conviction allegations [or findings] in furtherance of justice is limited. Its exercise must proceed in strict compliance with … section 1385[, subdivision ](a) .…' " (*People v. Williams* (1998) 17 Cal.4th 148, 158, third bracketed insertion added (*Williams*).) The Three Strikes law "was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, at p. 528; accord, *People v. Garcia* (1999) 20 Cal.4th 490, 501 ["a primary purpose of the Three Strikes law was to restrict judicial discretion"].) The Three Strikes law establishes " 'a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike' " unless the sentencing court finds a reason for making an exception to this rule. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) There are "stringent standards that

8.

sentencing courts must follow in order to find such an exception." (*Id*. at p. 377.) In order to dismiss a prior strike conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.)

A trial court's decision not to dismiss a prior strike conviction is reviewed under the deferential abuse of discretion standard. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) The Three Strikes law establishes that not striking a prior strike conviction is the norm, and there is a "strong presumption that any sentence that conforms to [the] sentencing norm[ ] is both rational and proper." (*Carmony*, at p. 378.) An abuse of discretion is established by demonstrating "that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions." (*People v. Myers* (1999) 69 Cal.App.4th 305, 309–310.) "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law,' " we are required to affirm the trial court's ruling, " 'even if we might have ruled differently in the first instance.' " (*Carmony*, at p. 378, first bracketed insertion added.)

### C.    Analysis

Defendant argues that the trial court abused its discretion in failing to strike one of his prior serious felony convictions which would have resulted in a "two strike sentence" of between 11 and 21 years and render defendant eligible for release at either 71 or 81 years of age. Defendant also argues that the court abused its discretion by failing to account for mitigating factors set forth in section 1385, subdivision (c), including

9.

imposing only one enhancement in multi-enhancement cases, crafting a sentence under 20 years, and dismissing enhancements based upon convictions that are over five years old.

At sentencing, the trial court had reviewed defendant's motion, the prosecution's opposition, and the probation officer's report. The court found that defendant did not fall outside the spirit of the Three Strikes law based upon his prior violent criminal history and the circumstances of the current offense which were substantially similar to his 1981 voluntary manslaughter offense. Because declining to strike a prior strike conviction is the "norm," we presume the trial court's decision was proper. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.)

The fact that defendant has not been convicted of a crime since 2012 does not convince us otherwise. "In determining whether a prior conviction is remote, the trial court should not simply consult the Gregorian calendar with blinders on." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; see *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124 [a prior strike conviction is not properly stricken merely because it is 30 years old].) No case law compels a court to strike a prior strike conviction simply based on its age.

Defendant also argues that witnesses testified that defendant had " 'changed his life,' " and other evidence demonstrated that defendant had "serious impairments" that prevented his ability to evaluate the need for self-defense given he was previously the victim of prison violence and may have been provoked. However, the trial court expressly considered "the nature and circumstances of … defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects," before concluding that defendant was not outside the spirit of the Three Strikes law and should be treated as though he had previously been convicted of one or more serious and/or violent felonies. (*Williams*, *supra*, 17 Cal.4th at p. 161.)

Defendant also argues that the trial court abused its discretion in declining to strike his prior strike conviction due, in part, to the court's failure to address section 1385, subdivision (c). We decline to find section 1385, subdivision (c)[6] applicable to a motion to dismiss a prior strike pursuant to section 1385, subdivision (a). "Whether the amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation which we review de novo." (*People v. Burke* (2023) 89 Cal.App.5th 237, 242.) *Burke* squarely rejected the application of section 1385, subdivision (c) to the decision whether to dismiss or strike a prior strike conviction because "the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense" and the "plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement." (*Burke*, at pp. 243–244.) Since *Burke*, every court that has addressed the issue has agreed with its holding. (*People v. McDowell* (2024) 99 Cal.App.5th 1147, 1155–1156; *People v. Dain* (2024) 99 Cal.App.5th 399, 410–411, review granted May 29, 2024, S283924; *People v. Olay* (2023) 98 Cal.App.5th 60, 68–69; *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2.) We decline to break with this authority. Because a strike is not considered an enhancement, the trial court was not required to consider section 1385, subdivision (c) in deciding whether to strike defendant's prior strike conviction.

We conclude that the trial court considered relevant factors and acted to achieve legitimate sentencing objectives. While defendant argues that the court should have weighed certain factors—the nature of this offense or the remoteness of his prior strikes—more heavily than others, this does not establish an abuse of discretion. The

---

[6] Section 1385, subdivision (c) sets forth several mitigating factors for consideration in determining whether to dismiss or strike a sentencing enhancement, including: (1) the commitment offense was connected to mental illness (*id*., subd. (c)(2)(D)); (2) the current offense is connected to prior victimization or childhood trauma (*id*., subd. (c)(2)(E)); (3) the current offense is not a violent felony as defined in section 667.5, subdivision (c) (*id*., subd. (c)(2)(F)); and (4) the enhancement is based on a prior conviction that is over five years old (*id*., subd. (c)(2)(H)).

court was required to weigh the nature and circumstances of defendant's instant offenses (*Williams*, *supra*, 17 Cal.4th at p. 161.) The court also properly took the seriousness of the present offenses into account when it declined to strike defendant's prior strike conviction. (See *Williams*, at p. 161 ["preponderant weight must be accorded to … the nature and circumstances of the defendant's present felonies"].)

We conclude that defendant has failed to establish that the trial court's denial of the invitation to strike his prior strike conviction was outside the bounds of reason under the facts and the law. Defendant has failed to show that the court was either unaware of its discretion or considered impermissible factors. The record shows that the court considered counsels' arguments as well as defendant's criminal history and his conduct in the instant offense in declining to strike his prior strike conviction. We may not find an abuse of discretion unless the decision was so irrational or arbitrary that no reasonable person could agree with it. And here, it was not.

On the record before us, the trial court did not abuse its discretion in deciding that the prior strike conviction and instant offense fell within the spirit of the Three Strikes law.

## II. *The trial court did not abuse its discretion in denying defendant's motion to strike his enhancements.*

### A. Applicable Law and Standard of Review

Section 1385 provides the trial court authority under section 1385 to strike or dismiss sentencing enhancements. Section 1385, subdivision (c)(1), provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2) provides, in turn, that when exercising its discretion to strike a sentence enhancement, the trial court must consider and give great weight to evidence of the presence of nine mitigating circumstances. (§ 1385, subd. (c)(2)(A)–(I).) "Proof of the presence of one or more of these

12.

circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

The California Supreme Court held section 1385, subdivision (c)(2), does not establish a presumption that "an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this 'furtherance of justice' (§ 1385, subd. (c)(1)) inquiry requires a trial court's ongoing exercise of 'discretion' (*id*., subd. (c)(2)). Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1033.) The court further observed, "in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Walker*, at p. 1033, quoting *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297, fn. 6.)

However, "if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. But ultimately, the court must determine whether dismissal is in furtherance of justice. This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker*, *supra*, 16 Cal.5th at p. 1036.)

13.

A court's discretion will be upheld if it is neither arbitrary nor capricious and exercised according to fixed legal principles. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th at p. 977.) A court's sentencing choices under section 1385 are reviewed for an abuse of discretion, which will be upheld if supported by substantial evidence. (*Carmony*, *supra*, 33 Cal.4th at p. 376.) " 'The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

## B.     Analysis

The particular factors listed in section 1385 that defendant claimed the trial court failed to adequately consider are multiple enhancements beyond a single enhancement, a resulting sentence of over 20 years, and a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(B), (C) & (H).) However, in this case, the court expressly ruled that dismissal of defendant's enhancements would, in fact, endanger public safety. The court specifically noted that defendant's age did not prevent him from committing the instant offense, indicating that defendant continued to be a danger to public safety despite his advancing age. Defendant has failed to demonstrate that the court abused its discretion.

## DISPOSITION

The judgment is affirmed.